UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

v.  | CR. No. 05-134-ML

THINH CAO

**MEMORANDUM AND ORDER**

Thinh Cao ("Cao") has filed a motion for New Trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. For the reasons that follow, that motion is denied.

FACTUAL BACKGROUND AND TRAVEL

Cao was charged in a two-count indictment, along with three co-defendants -- Van Anh ("Van"), Khong Nguyen ("Khong"), and Quoc Nguyen ("Quoc") -- with extortion and conspiracy to extort in the collection and attempted collection of an extension of credit, in violation of 18 U.S.C. §§ 891, 894 and 2. The indictment alleged that between March and August 2005, the four men conspired to collect an extension of credit (a $12,000 gambling debt) from one Tommy Nguyen,[1] using extortionate means, and that they committed the substantive offense of extortion (beating Tommy Nguyen).

Cao, Van and Khong were tried together before Judge Ernest C. Torres of this Court.[2] The evidence at trial showed that Tommy and a friend had placed a bet of $12,000 on NBA basketball games, of which Tommy's portion was $6,800. Their predictions proved inaccurate and the entire

---

[1] Tommy Nguyen is not related to Khong or Quoc, who are brothers.

[2] Quoc was tried separately and was convicted on the conspiracy count only. Judge Torres sentenced him to 46 months imprisonment, and his conviction and sentence were affirmed on appeal. See United States v. Nguyen, 542 F.3d 275 (1st Cir. 2008).

$12,000 was lost. Van was in charge of collecting the debt. Prior to the night in question, Van had met with Tommy a number of times concerning the collection. On several occasions Van was accompanied by Khong and several other men. Over the course of these meetings Tommy paid his $6,800 share of the total wager. Van, however, pressed Tommy for the remaining $5,200. When he refused, Van told him he could "run nowhere" and that he "would send somebody down." (See Transcript of Trial conducted on May 2, 2006 ["5/2/06 Trial Tr."] at 24.)

Tommy testified that on the evening of July 25, 2005 he was visited at his nail salon in West Warwick, Rhode Island by Khong, Quoc and Cao, all of whom had driven from the Boston area. The three men confronted Tommy outside his shop and demanded the $5,200 balance. (Id. at 26.) Tommy refused and retreated into the salon. (Id.) The men did not leave and again confronted Tommy when he emerged almost an hour later with an employee, Thom Thi Tong (Tammy), demanding that Tommy pay the money. (Id. at 27-28.) Tommy insisted that he had paid and unsuccessfully attempted to reach Van on his cell phone. (Id. at 30.) Cao then placed a call to Van and when Van answered, gave the phone to Tommy. (Id.) Van advised Tommy that he had better pay the balance because otherwise "they will take care of you." (Id. at 31.) Cao also told Tommy to "just pay the money." (Id. at 32.)

Tommy further testified that after the call Khong and Quoc began to beat him, knocking him to the ground and punching and kicking him. (Id. at 33-36.) His co-manager, Thytrang Nguyen (Yvonne),[3] arrived at the scene and interceded in an attempt to protect Tommy. Tommy ran, and Khong and Quoc chased after him. (Id. at 35-36.) After Yvonne called the police, the two men fled with Cao. (Id. at 36.) On cross-examination Tommy testified that immediately before Khong and

---

[3] Although she has the same surname, Yvonne is not related to Tommy, Khong or Quoc.

2

Quoc began to beat him, Cao said, "[t]ake care of him and go home" or words to that effect. (Id. at 91, 100.)

Tammy, the employee, testified that when Khong and Quoc demanded that Tommy pay the money, Cao told Tommy that he should just pay the money because if he didn't pay, the other two would hurt him. (5/2/06 Trial Tr. at 125.) After Khong and Quoc continued to demand payment, Cao told them that there was no need to talk further and to "just ask him if he will pay or not," at which point the two began to beat Tommy. (Id. at 125, 128.) Tammy stated that while the men were beating him, Cao sat a few feet away on a curb. (Id. at 126-27.) After Tommy's co-manager arrived and attempted to protect Tommy from being beaten, Tommy began running away, and Khong and Quoc ran after him. (Id. at 128-29.) Tammy testified that at this point Cao called to Khong and Quoc, saying "[d]on't worry. Tom still have the business here. He could not run anywhere." (Id. at 129.)

Tommy's co-manager Yvonne testified that she arrived on the scene as the argument was escalating. (5/2/06 Trial Tr. at 144-45.) She observed Cao sitting on the curb and at one point stand between Tommy and the other with a cellphone. (Id. at 146.) When Khong and Quoc began to beat Tommy she interceded and attempted to protect Tommy and told the two men she would call the police. (Id. at 147.) Tommy broke free and started running away. (Id. at 148.) Khong and Quoc ran after Tommy, at which point Yvonne yelled to Tommy that she had called the police and they were on the way. (Id. at 149.) Yvonne stated that at that point the three men then took off in the vehicle. (Id.) The three were arrested a short time later in Massachusetts and were returned to Rhode Island authorities.

West Warwick Police Officer Donald Archibald described how Khong, Quoc and Cao were booked after they were transferred to the Rhode Island authorities. (See Transcript of Trial conducted on May 3, 2006 ["5/3/06 Trial Tr."] at 14-25.)

FBI Agent Joseph Degnan testified regarding records of calls made to and from Cao's cellphone. Those records showed a number of phone calls between Cao and Van and Khong within 24 - 48 hours before the incident as well as a call from Cao's cellphone made to Van at the time of the incident. (Id. at 99-105.)

After a four-day jury trial, all defendants were found guilty on all charges. Judge Torres sentenced them to the following prison terms: Van Anh, 52 months; Khong Nguyen, 46 months; and Thinh Cao, who was found to be a Career Offender, 150 months. The defendants appealed, and the First Circuit affirmed their convictions. United States v. Anh, 523 F.3d 43 (1st Cir. 2008). Further review was denied by the Supreme Court. Thinh Cao v. United States, 129 S.Ct. 234 (2008).

Thereafter, Cao timely filed the instant motion for new trial, pursuant to Fed. R. Civ. P. 33.[4] Along with his motion, he submitted affidavits from two of his co-defendants, Khong and Quoc and one from himself, discussed infra. Khong's affidavit states that on the evening in question he, Quoc and Cao were en route to Foxwoods casino when Khong decided to stop at Tommy's nail salon in order to collect money that he had personally loaned to Tommy; that Cao had no knowledge of his intention to stop, nor did Cao have any involvement with the dispute between Tommy and Khong. (Khong Aff., ¶¶ 2-4.) Quoc's affidavit likewise avers that the purpose of the trip was to go to

---

[4] Fed. R. Crim. P. 33 provides in pertinent part:
(a) Defendant's Motion. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. . . .
(b)(1) Newly Discovered Evidence. Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty . . . .

4

Foxwoods; that Cao did not know that Quoc and Khong were planning to stop at Tommy's nail salon; and that Cao had no involvement in the attempt to collect money from Tommy that evening and in fact disagreed with using force on Tommy for failing to pay the money. (Quoc Aff., ¶¶ 2-4.)

Along with his motion, Cao has filed a motion for an evidentiary hearing and a motion for the appointment of counsel. The Government has opposed all of these motions, arguing that the new evidence offered was not 'unavailable' and would not likely result in Cao's acquittal. This matter has been re-assigned to the undersigned and is now ready for decision.[5]

## DISCUSSION

In his Rule 33 motion, Cao contends that the exculpatory affidavits by Khong and Quoc constitute "newly discovered evidence" which would likely result in his acquittal and thus warrant a new trial. Cao further contends that the evidence in those affidavits was "unavailable" at his trial because both Khong and Quoc also went to trial and exercised their Fifth Amendment privilege and that it was only after their appeals had been exhausted and the need for the privilege ended that they were able to testify in his favor, rendering such evidence available.

A defendant who asserts that he is entitled to a new trial based upon newly discovered evidence must establish that: (1) the newly discovered evidence was unknown or unavailable to him at the time of trial; (2) the failure to bring the evidence forward was not the result of a lack of due diligence on the defendant's part; (3) the evidence is material (as opposed to being cumulative or impeaching); and, (4) the emergence of the evidence will "probably result in an acquittal upon retrial of the defendant." United States v. Del-Valle, 566 F.3d 31, 38 (1st Cir. 2009). Accord United States

---

[5] Cao has also filed a motion to vacate his conviction pursuant to 28 U.S.C. § 2255 on various grounds, several of which overlap the grounds alleged in the instant motion for new trial. Pursuant to this Court's previous Order, the § 2255 motion is being held in abeyance, pending the resolution of the instant rule 33 motion and related matters. (See Order dated Oct. 21, 2009 [Doc. #227].)

v. Maldonado-Rivera, 489 F.3d 60, 66 (1st Cir. 2007); United States v. Montilla-Rivera, 115 F.3d 1060, 1064-65 (1st Cir. 1997). If any one of the four requirements is not met, the motion for new trial must be denied. Del-Valle, 566 F.3d at 38. "The remedy of a new trial must be used sparingly, and only where a miscarriage of justice would otherwise result." Id. (quoting United States v. Conley, 249 F.3d 38, 45 (1st Cir. 2001)).

This Court reviews the motion and accompanying affidavits under this test.

A.  Unavailability of New Evidence

As to the first prong, the First Circuit has held that a belated exculpatory affidavit from a co-defendant who asserted his Fifth Amendment privilege at trial may be considered evidence that was 'unavailable' to the defendant seeking a new trial. See Montilla-Rivera, 115 F.3d at 1066. Accord United States v. Hernandez-Rodriguez, 443 F.3d 138, 144 (1st Cir. 2006). Such evidence, however, must be regarded "with great skepticism," because "[a] convicted, sentenced co-defendant has little to lose (and perhaps something to gain) by such testimony." Montilla-Rivera, 115 F.3d at 1066. In Montilla-Rivera, the Court of Appeals ruled that the district court should have considered the belated affidavits of two co-defendants, in view of that case's "unusual circumstances, including the weakness of the government's case against the defendant, significant efforts to procure the co-defendants' testimony before his own conviction, and the plausible explanation as to why the evidence was not available earlier." Id. at 1067-68. See also Hernandez-Rodriguez, 443 F.3d at 144 (granting motion for new trial where co-defendant who was to testify on defendant's behalf at trial reneged on eve of trial).

In the instant case, Khong asserted his Fifth Amendment privilege and did not testify at trial. Under the above precedent, the evidence in his affidavit may be deemed "unavailable" to Cao. It is

not clear, however, that Quoc's affidavit constitutes evidence that was unavailable to Cao at trial. Unlike Khong, Quoc did testify in his own defense at his separate trial (see n. 2 supra), and thus his testimony was not truly unavailable to Cao, under Montilla-Rivera. Therefore, it does not appear that Cao has made the required showing of unavailability with respect to Quoc's affidavit.[6] Nevertheless, "out of an abundance of caution," this Court will consider both affidavits "under the other prongs of the test, proceeding through the remainder of the inquiry with appropriate caution." Del-Valle, 566 F.3d at 39 (internal quotation omitted).

B. Due Diligence

The level of diligence required in a Rule 33 inquiry is "dependent upon the nature of the evidence in question." Hernandez-Rodriguez, 443 F.3d at 144. To satisfy the diligence requirement in the context of an exculpatory affidavit from a co-defendant who previously asserted the Fifth Amendment, a defendant must at least have made some effort to procure the co-defendant's testimony before or at trial. In Hernandez-Rodriquez the Court of Appeals held (1) that due diligence was shown where the codefendant agreed to testify at on Hernandez's behalf at trial and then reneged at the last minute; and (2) that a new trial was warranted on the basis of exculpatory evidence presented in a co-defendant's affidavit and testimony at an evidentiary hearing. Id. at 144-48.

Here, Cao does not allege that either Khong or Quoc agreed to testify at his trial and then reneged on that promise, or that he unsuccessfully attempted to interview the brothers concerning their testimony. There is nothing in the record to suggest that Cao informed this Court of his desire to call Khong or Quoc as witnesses or that he requested a continuance so that he could further

---

[6] Cao's own affidavit is not newly discovered evidence for Rule 33 purposes. The information in Cao's affidavit was fully known to him at the time of trial. For whatever reasons, Cao elected not to testify at trial to the version of the facts he now offers by way of affidavit.

explore presenting their testimony. While Cao did file a motion to sever his trial from that of his co-defendants (Doc. # 53), that motion was based upon a post-arrest statement made by Quoc that potentially implicated Cao, see Bruton v. United States, 391 U.S. 123 (1968), rather than on Cao's desire to call Khong or Quoc as witnesses – and Quoc's trial was severed in any event.

Finally and most significantly, Cao admits in his own affidavit, submitted in support of his motion, that there was a "mutual understanding" between Cao and his co-defendants that he and his co-defendants would exercise their Fifth Amendment privilege and not testify at trial because of the risk of incriminating themselves. (See Affidavit of Thinh Cao dated June 26, 2009, attached to Reply ["Cao Reply Aff."], at ¶ 2.) Compare Hernandez-Rodriquez, 440 F.3d at 144 (defense counsel made arrangements for co-defendant to testify but codefendant reneged). In effect Cao and his co-defendants had a pact to remain silent throughout their respective trials. This admission cuts against any showing of any efforts by Cao or his counsel to bring forward at his trial the evidence he now proffers.[7]

C.  Likelihood of Acquittal

Under the fourth prong Cao must establish that the new evidence "will probably result in an acquittal upon retrial" of the case. See Del-Valle, 566 F.3d at 38. Here again, his argument falls short.

First, the affidavits Cao proffers are conclusory or otherwise questionable. Khong's affidavit merely says, in pertinent part, that "Cao had no knowledge of my intentions of stopping at the nail

---

[7] This agreement with his co-defendants also negates Cao's contention that to ask them to testify when he already knew they planned to invoke their Fifth Amendment privilege would have been an "exercise in futility." (Reply at 2). Cao was not put off by his co-defendants' position; he actively participated in and supported their silence, in effect acting against his own interest (to obtain potentially exculpatory evidence that he now claims he knew existed at the time.) See Del-Valle, 566 F.3d at 40, n.6.

8

salon prior to me picking him up for the trip to the casino, nor did he have any involvement in the dispute between Tommy and myself" – without providing any details. (Khong Aff., fourth para.) Quoc inaccurately states in his affidavit that "Mr. Thinh Cao had no involvement whatsoever in the collection of money from Tommy Nguyen." (Quoc Aff., ¶ 1.) Further, the details given by Quoc of the night in question contradict the testimony he gave at his own trial, which in turn was contradicted by the statements he made to police immediately after his arrest, as described by Officer Donald Archibald.[8]

Second, even if the case against Cao were not as strong as that against Van and Khong, there was ample evidence of Cao's participation in the collection attempts on the night in question. Tommy, the victim, testified that Cao told him to pay the money and that it was Cao who called Van Anh and then handed the telephone to Tommy, at which point Van Anh told Tommy to pay up or they would take care of him. (5/2/06 Trial Tr. at 32, 73, 78-79, 92.) Tommy also testified that Cao stated that Khong and Quoc should "take care" of Tommy and "go home." (Id. at 91-93, 100.) Tammy likewise described Cao as the person who told the other two just before the beating commenced that there was "no need to talk further; just ask Tommy if he wants to pay or not" and who later stated, when he was calling them off from chasing Tommy, that Tommy still had his

---

[8] In his affidavit, Quoc avers *inter alia* that:"Cao did not even know that <u>we were going to stop to meet Tommy Nguyen</u> at his Nail Salon <u>in an attempt to collect money</u>"and that Mr. Cao was not in agreement with the means that were used to punish Tommy Nguyen for failing to pay..." (Quoc Aff. at ¶¶ 2, 4) [emphasis added]). However, at his own trial Quoc testified that he believed that they were driving to the casino (see Transcript of Trial of Quoc Nguyen conducted on June 15, 2006 at 5, 7); that he did not know why his brother was going to Rhode Island other than to meet a friend (id. at 7) and did not know Tommy owed money to Van Anh (id. at 12); that he pushed Tommy out of a reflex action when Tommy fell against him, but he never punched him (id. at 14-15). Officer Archibald testified that Quoc told him on the night of his arrest that the three men had gone to Tommy's nail shop for the specific purpose of collecting a gambling debt owed by Tommy. (See Transcript of Trial of Quoc Nguyen conducted on June 14, 2006 at 135.)

9

business here and "could not run anywhere." (Id. at 128-129.)[9] Moreover, cellular telephone records at or near the date of the incident, introduced at trial, showed calls between Cao and Khong Nguyen earlier that day, and calls between Cao and Van Anh in the days prior to and on that date.

Furthermore, the Court of Appeals, in affirming Cao's conviction, likewise noted that "[t]he government presented ample evidence indicating that Cao *was* allied with the two others." Van, 523 F.3d at 56 (emphasis in original). In its summary of the evidence, the court noted many of the above details of Cao's involvement: that Cao demanded that Tommy pay the money more than once during the encounter, that phone records tied Van, Khong, and Cao to each other and the beating; that Cao placed a phone call to Van and gave the phone to Tommy, and when the phone conversation ended Cao instructed Khong and Quoc to "take care of him" and "go home," id. at 47-48, and that when Tommy attempted to escape and Khong and Quoc initially gave chase, "Cao called them off, noting that Tommy 'ha[d] a business [t]here' and 'could not run anywhere.'" Id. at 47.

Based upon the foregoing analysis, this Court concludes that Cao has not shown that the new evidence he proffers "would probably result in [his] acquittal upon retrial." This Court further finds that no evidentiary hearing is necessary to adjudicate Cao's motion for new trial.

This Court has considered all of Cao's other arguments in support of his motion and finds them to be unpersuasive. Because Cao has not made the requisite showing as to three of the four prongs of the pertinent test, his motion for new trial must fail.

---

[9] Although Tammy could not give an in-court identification of Cao at trial, she did testify that she identified all three defendants -- Khong, Quoc and Cao -- at the police station later on the evening of the beating. Cao's suggestion that Tammy's testimony "should be considered unreliable . . . because she had a lot to lose if she did not testify in a way that was favorable to Tommy and the prosecution" (Motion for New Trial at 6) is belied by the record. If Tammy were attempting to curry favor with Tommy and the prosecution, she would have made an in-court identification of Cao and Khong Nguyen. Her failure to do so suggests that she was not prone to exaggerate her testimony.

10

## CONCLUSION

For the foregoing reasons, Cao's motion for new trial is hereby DENIED. In addition, Cao's motion for evidentiary hearing and his motion for the appointment of counsel are likewise DENIED.

SO ORDERED:

_____
Mary M. Lisi
Chief United States District Judge

Date: December 3, 2010