# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| UNITED STATES OF AMERICA | |
|---|---|
| v. | CR. No. 05-134-ML |
| THINH CAO | |

## MEMORANDUM AND ORDER

Thinh Cao ("Cao") has filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 and a motion to amend that motion to vacate. For the reasons that follow, both motions are denied.

I.     FACTUAL BACKGROUND AND TRAVEL[1]

Cao was charged in a two-count indictment, along with three co-defendants -- Van Anh ("Van"), Khong Nguyen ("Khong"), and Quoc Nguyen ("Quoc") -- with extortion and conspiracy to extort in the collection and attempted collection of an extension of credit, in violation of 18 U.S.C. §§ 891, 894 and 2. The indictment alleged that between March and August 2005, the four men conspired to collect an extension of credit (a $12,000 gambling debt) from one Tommy Nguyen, using extortionate means (Count I), and that they committed the substantive offense of extortion (beating Tommy Nguyen) (Count II).

Cao, Van and Khong were tried together before Judge Ernest C. Torres of this Court.[2] The

---

[1] The facts and travel of this matter have been extensively described in this Court's recent ruling denying Cao's motion for new trial see Memorandum and Order dated December 3, 2010 (Doc. #229) ["R. 33 Mem. & Order"] and in the Court of Appeals decision affirming the co-defendant's convictions. See United States v. VanAnh, 523 F.3d 43, 46-48 (1st Cir. 2008). Only those facts necessary to address the instant motion to vacate and motion to amend are set forth herein.

[2] Quoc was tried separately and was convicted on the conspiracy count only. He was sentenced to 46 months imprisonment, and his conviction and sentence were affirmed on appeal. See United States v. Nguyen, 542 F.3d 275 (1st Cir. 2008).

evidence at trial showed that on the evening of July 25, 2005, Tommy was visited at his place of business in West Warwick, Rhode Island by Khong, Quoc and Cao – who were sent by Van -- in order to collect the balance owed by Tommy on the gambling debt and that when he refused to repay, he was physically beaten by Khong and Quoc, in the presence of two employees, after being urged by Cao to "just pay the money." Cao, Khong and Quoc were arrested, questioned and detained later on the same evening.

After a four-day jury trial, all three co-defendants were found guilty on all charges. At sentencing, Cao was found to be a career offender and was sentenced to 150 months imprisonment. Van and Khong were sentenced to 52 months and 46 months, respectively. Further details concerning the trial and sentencing are set forth infra. Throughout all pertinent proceedings in this Court, Cao was represented by retained counsel, Attorney John F. Cicilline.

Cao and his co-defendants appealed, with Cao represented by new counsel, John T. Ouderkirk, Jr. The First Circuit affirmed their convictions, United States v. Anh, 523 F.3d 43 (1st Cir. 2008), and further review was denied by the Supreme Court. Thinh Cao v. United States, 129 S.Ct. 234 (2008).

Thereafter, Cao filed a motion for new trial, pursuant to Fed. R. Civ. P. 33.[3] In support of this motion, he submitted "exculpatory affidavits" from two of his co-defendants, Khong and Quoc, each of which averred that Cao had no knowledge of the purpose of the trip to West Warwick and that he was not involved in the attempt to secure repayment, including the beating of Tommy. In his Rule 33 motion Cao contended that the affidavits by Khong and Quoc constituted "newly

---

[3] Beginning with the motion for new trial, this matter was reassigned to the undersigned for all further proceedings in this Court.

2

discovered evidence" which would likely result in his acquittal and thus warrant a new trial and that the evidence in those affidavits was "unavailable" at Cao's trial because both Khong and Quoc had exercised their Fifth Amendment privilege against self-incrimination at trial and on appeal.

This Court denied the Rule 33 motion. In its ruling the Court concluded that under the four-prong test for newly discovered evidence, the evidence in both affidavits could not be deemed to have been previously "unavailable," and that Cao failed to show the requisite due diligence in obtaining that evidence prior to his trial, given his admission that there was a "mutual understanding" between Cao and his co-defendants that they would exercise their Fifth Amendment privilege and not testify at trial. See R. 33 Mem. & Order at 7-8.[4] This Court further found that notwithstanding the exculpatory statements in the affidavits, in view of the other independent evidence linking Cao to the offense, including records of cell phone calls between Cao and his co-defendants at or near the time of the offense, the likelihood that this new evidence would result in his acquittal was remote. Id. at 8-10. The Court subsequently denied Cao's motion for reconsideration of its ruling. See Order dated February 9, 2011 (Doc. #237). Cao did not appeal either the ruling or the denial of reconsideration.

While his Rule 33 motion was pending, Cao filed a motion to vacate his conviction pursuant to 28 U.S.C. § 2255 (Doc. #224). In his motion Cao raises three sets of claims: (1) that new evidence shows that he is innocent of the offenses of which he was convicted; (2) that his trial counsel rendered ineffective assistance by failing to present this exculpatory information and move for a severance or continuance of Cao's trial based on that information; by failing to contest his

---

[4] The Court also noted that Cao failed to establish that the evidence in Quoc's affidavit was unavailable, as Quoc had testified in his own defense as his separate trial. Id. at 6-7.

3

indictment as deficient; and by exposing Cao's criminal history to the jury; and (3) that his appellate counsel was ineffective in failing to raise an insufficient evidence claim and to challenge Cao's sentence on direct appeal.

The §2255 motion was held in abeyance pending resolution of the Rule 33 motion. (See Order dated Oct. 21, 2009 [Doc. #227].) After the Rule 33 ruling was issued, the Government, at the direction of the Court, filed its opposition to Cao's motion to vacate (Doc. #234), and Cao has filed a reply (Doc. #239). Cao has also filed a motion to amend his §2255 motion to vacate, to which the Government has objected. This matter is now ready for decision.[5]

## II.　DISCUSSION

Generally, the grounds justifying relief under §2255 are limited. A court may grant such relief only if it finds a lack of jurisdiction, constitutional error or a fundamental error of law. See United States v. Addonizio, 442 U.S. 178, 184-185 (1979) ("An error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice.") (internal quotes omitted).

### A.　Newly Discovered Evidence

Cao first claims that newly discovered evidence, in the form of affidavits by his co-defendants Khong Nguyen (Khong) and Quoc Nguyen (Quoc), establish his actual innocence. He points to the affidavits of these co-defendants that were also submitted in support of his Rule 33

---

[5] Although Cao requests an evidentiary hearing on his claim, no hearing is required in connection with any issues raised by his motion to vacate or his motion to amend, because as discussed infra, the files and records of this case conclusively establish that the claims in the motion to vacate are without merit. See David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (district court properly may forego any hearing "when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.") (internal quotations omitted).

4

motion.⁶ This claim was rejected in this Court's ruling on Cao's Rule 33 motion. As noted above, this Court found (1) that Cao failed to establish that the evidence in at least one of the two affidavits was unavailable;⁷ (2) that Cao failed to show the requisite due diligence in obtaining that evidence prior to his trial, given his admission that there was a "mutual understanding" between Cao and his co-defendants that they would exercise their Fifth Amendment privilege and not testify at trial; and (3) that in view of the other independent evidence linking Cao to the offense, the likelihood of that this new evidence would result in his acquittal was remote. (R. 33 Mem & Order at 6-10.) Thus, as Cao himself acknowledges,⁸ that ruling essentially forecloses this claim.

B. Ineffective Assistance – Trial Counsel

Cao raises several claims of ineffective assistance by his trial counsel, none of which warrant relief. A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate:

(1) That his counsel's performance fell below an objective standard of reasonableness; and

(2) [A] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). See United States v. Manon, 608 F.3d 126 (1st Cir. 2010) (same).

---

⁶ Khong's affidavit states that on the evening in question he, Quoc and Cao were en route to Foxwoods casino when Khong decided to stop at Tommy's nail salon in order to collect money that he had personally loaned to Tommy; that Cao had no knowledge of his intention to stop, nor did Cao have any involvement with the dispute between Tommy and Khong. (Khong Aff., ¶¶ 2-4.) Quoc's affidavit likewise avers that the purpose of the trip was to go to Foxwoods; that Cao did not know that Quoc and Khong were planning to stop at Tommy's nail salon; and that Cao had no involvement in the attempt to collect money from Tommy that evening and in fact disagreed with using force on Tommy for failing to pay the money. (Quoc Aff., ¶¶ 2-4.)

⁷ As the Government points out (Gov't Mem. at 14), the evidence in question could hardly have been 'newly discovered' when Cao claims to have pointed the evidence out to his counsel prior to trial.

⁸ See Reply at 2 (acknowledging "the seemingly dispositive effect of the court's ruling on his new trial motion upon some of his claims" and focusing on the remaining four claims raised).

5

To show deficient performance by counsel, the defendant "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" United States v. Manon, 608 F.3d 126, 131 (1st Cir. 2010) (quoting Strickland, 466 U.S. at 690). To satisfy the prejudice requirement, a defendant must show a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. United States v. Theodore, 468 F.3d 52, 56 (1st Cir. 2006) (citing Strickland, 466 U.S. at 695).

1. Failure to Seek a Continuance and/or Request Severance

Cao claims that his trial counsel was ineffective in failing either to seek a continuance of trial (Motion to Vacate, Ground C) or to request a severance of his trial (id., Ground D) on the basis of the allegedly exculpatory evidence possessed by his co-defendants. In view of this Court's finding, supra, that this exculpatory evidence was not 'unavailable' in view of Cao's pact of silence with his co-defendants and would not have indisputably established Cao's innocence, counsel's failure to seek a continuance or severance of Cao's trial did not constitute deficient performance.[9] See Tse v. United States, 290 F.3d 462, 465 (1st Cir. 2002) ("Since [petitioner's] claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail.").

Moreover, by Cao's own admission, his co-defendants Khong and Quoc would not have testified prior to the conclusion of their own trials and appeals, and counsel could not have

---

[9] Cao's counsel did in fact file a motion to sever his trial from that of his co-defendants (Doc. # 53), although that motion was based upon a post-arrest statement made by Quoc that potentially implicated Cao, rather than on Cao's desire to call Khong or Quoc as witnesses – and Quoc's trial was severed in any event.

reasonably expected to obtain a continuance during that period. See United States v. Perkins, 926 F.2d 1271, 1281 (1st Cir. 1991) (defendant seeking severance in order to have co-defendant testify must show that co-defendant is likely to testify at defendant's trial and that testimony would be exculpatory). Thus, counsel was not deficient in failing to pursue this approach. See Cronic, 466 U.S. at 656 n.19 (counsel need not engage in futile exercise or needless charade); Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999), cert. denied, 528 U.S. 1163 (2000) (same). For the same reasons, Cao was not prejudiced by counsel's failure to seek a continuance or severance of trial. See Strickland, 466 U.S. at 692.

2. Failure to Challenge Defective Indictment

Cao next claims that his trial counsel was ineffective in failing to raise a claim that his indictment was defective. He asserts that counsel should have argued that the indictment failed to specify the location of the alleged offense and the means by which the alleged threats were communicated, pointing to United States v. Tomasetta, 429 F.2d 978 (1st Cir.1970). (Pet. Mem. at 12-15.)[10]

Cao's reliance on Tomasetta fails to take into account subsequent case law in this Circuit, cited by the Government, which distinguishes and limits the scope of that decision. In United States v. Sedlak, 720 F.2d 715 (1st Cir. 1983), the defendants were convicted of conspiring to use and using extortionate means to collect an extension of credit in violation of 18 U.S.C. § 894. On appeal the defendant, relying on Tomasetta, argued that the indictment was unconstitutionally vague and

---

[10] In Tomasetta, the defendant, who was convicted of extortion in violation of 18 U.S.C. §894, argued that the indictment was defective in that it failed to name the victim and location of the offense, to describe in detail the means of extortion, and to allege federal jurisdiction. The Court found that under the circumstances of the case the failure to name the victim was fatal, noting that this error, taken together with the failure to specify the means and precise location of the offense, made it unfair to require the defendant to answer the charge. Tomasetta, 429 F.2d at 979-981. The court remanded with instructions to dismiss the indictment. Id. at 981.

7

indefinite because although it identified the victim, it did not allege the date, place and circumstances of the extension of credit or the time and place that the defendants became involved in the conspiracy. The Court of Appeals found that naming the victim was a "major distinction from the Tomasetta case." Sedlack, 720 F.2d at 719. The Court also noted that "[t]he persons alleged to have been involved in the conspiracy were named, and the general time frame of the occurrence of the conspiracy was identified." Id. See also United States v. Hallock, 941 F.2d 36, 40-41 (1st Cir. 1991) (defendant appealed district court's denial of motion for bill of particulars on grounds that indictment was impermissibly vague under Tomasetta; Court of Appeals affirmed denial of motion, finding that defendant had been given names of defendant's four principal co-conspirators); United States v. Gianelli, 585 F.Supp.2d 186, 192-93 (D. Mass. 2008) (court denied defendants' motion to dismiss extortion counts in indictment as unconstitutionally vague under Tomasetta, where indictment identified individuals alleged to have been involved, the victim and time frame during which criminal conduct was alleged to have occurred).

Here, as in Sedlack and Giannelli, each count of the indictment specified the name of the victim and a limited time frame for the offense -- March 2005 through August 2005 for Count I and July 25, 2005 for Count II -- as well as the names of Cao's three co-conspirators and co-defendants. Further, Cao alleges neither surprise, nor confusion, nor prejudice. He does not deny that he was in the parking lot of the nail salon on July 25, 2005. He does not disavow knowledge of the identities of his co-defendants or claim that he did not recognize the victim when Tommy appeared at trial. He does not deny that Tommy was assaulted. His defense that he was merely an innocent bystander (Pet. Mem. at 14) shows that he was fully informed about the nature of the offense, the identity of victim, the identities of his co-conspirators, the location of the offense, and the time of the offense. In short, the indictment here "was sufficiently particular and definite to apprise [Cao] of the charge

8

against [him] so as to enable [him] to prepare [his] defense." Sedlak, 720 F.2d at 719.

Thus, counsel did not perform deficiently in failing to challenge the indictment on the basis of Tomasetta; rather his performance was reasonable in view of subsequent case law. Moreover, based upon the foregoing, Cao has not established that even had his counsel cited to Tomasetta, this Court would have ruled in his favor.[11]

3. Disclosure of Criminal History

Cao next argues that his counsel was ineffective because during cross-examination of West Warwick Police Officer Donald Archibald (who questioned Cao after his arrest) -- he permitted Cao's criminal history to be disclosed to the jury. During that cross-examination, in response to defense counsel's question concerning whether Archibald had advised Cao of his Miranda warnings, the officer mentioned that Cao told him he had been in jail previously for 14 years.[12] Counsel immediately moved to strike that portion of the testimony, which the trial court did, with a cautionary instruction to the jury. (5/3/06 Trial Tr. at 39.) Then, at the conclusion of Officer Archibald's testimony and that of the next witness, Cao's counsel moved for a mistrial based upon his questioning of Officer Archibald, which motion was denied. (Id. at 56-58, 134). At defense

---

[11] This Court notes that counsel did challenge Cao's indictment, albeit on different grounds from the ground Cao urges here. (Doc. # 61). The fact that the motion was not successful (see Order denying motion [Doc. #65]) does not mean that counsel was ineffective. See Strickland, 466 U.S. at 699.

[12] The following exchange occurred:
Q. Anyway, you went through the same [interrogation] process; is that right?
A. Yes, I did.
Q. And he talks to you?
A. No, he does not.
Q. He does not talk to you at all?
A. No, I asked him if he wanted to talk about his involvement in the incident, if any, and he said that he had been in jail for 14 years and –
Mr. Cicilline: I move to strike.
The Court: The jury shall disregard the last comment.
Mr. Cicilline: I have nothing further.
(See Transcript of Trial, Day Three conducted on May 3, 2006 ["5/3/06 Trial Tr."] at 39.)

counsel's request, the trial court gave a cautionary instruction to the jury after closing arguments. (Id. at 134-135; Transcript of Trial, Day Four, conducted on May 4, 2006 ["5/4/06 Trial Tr."] at 83-84.)

"Where, as here, 'a curative instruction is promptly given, a mistrial is warranted only in rare circumstances implying *extreme prejudice*.'" United States v. Glenn, 389 F.3d 283 (1st Cir. 2004) (quoting United States v. Freeman, 208 F.3d 332, 339 (1st Cir. 2000)) (further quotation omitted) (emphasis in original). See Van Anh, 523 F.3d at 54 ("[C]ourts have long recognized that, within wide margins, the potential prejudice stemming from improper testimony or comments can be satisfactorily dispelled by appropriate curative instructions.") (internal quotations omitted). In determining whether a mistrial is warranted where a witness has improperly referred to a defendant's previous criminal history, relevant factors include whether the reference to the previous criminal activity was fleeting, the strength of the evidence against the defendant, and whether prompt curative instructions were given to the jury to disregard the testimony. See Glenn, 389 F.3d at 287 (testimony by law enforcement witness that he had previously viewed photographs of defendant did not warrant a mistrial where curative jury instruction was promptly given); United States v. Chamorro, 687 F.2d 1 (1st Cir.1982) (testimony that defendant had been previously convicted of intent to murder did not warrant a mistrial where jury received a cautionary instruction and the case moved forward quickly). See also United States v. Moore, 376 F.3d 570, 575 (6th Cir. 2004) (reference by witness that defendant said he was a convicted felon did not warrant a mistrial where there was only a single comment and a curative instruction was given); United States v. Allen, 425 F.3d 1231, 1236 (9th Cir. 2005) (witness's testimony that defendant had been in jail did not call for mistrial where reference was isolated, a curative instruction was given, and evidence against defendant was overwhelming).

10

Here, Cao has failed to show prejudice, let alone extreme prejudice. The reference to Cao's crminal history was fleeting – and relatively unexpected, given the question. The trial court immediately instructed the jury to disregard the comment, and after denying counsel's motion for a mistrial, the Court, at counsel's request, gave a more extensive instruction at the close of trial.[13] Contrary to Cao's contention, the evidence against him was strong, including his presence at the scene, his demands for the money, his other statements to Tommy Nguyen, his providing his cellular telephone to Tommy Nguyen so that he could speak with Van Anh, and the telephone records. Thus, counsel's performance in this regard was well within "the wide range of reasonable professional assistance," which is all that is required. Strickland, 466 U.S. at 689.

Moreover, Cao has not shown a reasonable probability that if his prior jail time had not been mentioned, Cao would have been acquitted. His speculation that the jury may have been critically influenced by learning of his criminal history is just that.

Given this Court's findings as to the foregoing ineffective assistance claims, Cao's further argument that his trial counsel's errors, taken cumulatively, deprived him of his Sixth Amendment right to effective assistance of counsel likewise fails. Each of the alleged errors has been shown to

---

[13] In his formal instruction, Judge Torres stated:

During the trial, a statement was made to the effect that one of the defendants previously had severe a term of imprisonment. I told you at the time to disregard that statement and to put it out of your mind, and I want to repeat that now. I want to emphasize that you should not allow that statement to in any way affect your decision in this case.

First of all, you haven't heard any evidence on this point. All you heard was that one statement, that passing reference. But more importantly, under our system of justice, a defendant must be judged based upon the offense with which he is charged and the evidence that pertains to that particular charge, and not on the basis of anything that a defendant may or may not have done in the past, particularly when it may bear no relationship whatsoever to the charges for which he is currently being tried.

5/4/06 Trial Tr. at 83-84.)

be nonexistent, and therefore there was no cumulative effect to take into consideration. See Ryan v. United States, No. 07-138-S, 2008 WL 780638 (D.R.I. Mar. 21, 2008) (in absence of any single prejudicial error, "[t]he cumulative effect of nothing is nothing").

C. Ineffective Assistance – Appellate counsel

Cao further claims that his appellate counsel was ineffective in failing to argue on direct appeal (1) that the evidence was insufficient to convict Cao and that Cao's co-defendants possessed exculpatory evidence (Pet. Mem. at 19); and (2) that his sentence was procedurally and substantively unreasonable (Id. at 19-22.)

To establish ineffective assistance of appellate counsel, a defendant "must first show (1) that his counsel was objectively unreasonable;" and (2) "a reasonable probability that, but for his counsel's unreasonable failure to [raise a particular issue], he would have prevailed on his appeal." Smith v. Robbins, 528 U.S. 259, 285 (2000). "[T]o be effective, "appellate counsel ... need not (and should not) raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." Thompson v. Spencer, 111 Fed.Appx. 11, 13 (1st Cir. 2004) (quoting Robbins, 528 U.S. at 288). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id. (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)).

1. Sufficiency and Exculpatory Evidence

Cao's first contention regarding counsel's failure to contest the sufficiency of the evidence is preempted by prior rulings in his case. At the close of the evidence, Judge Torres denied Cao's motions for judgment of acquittal, stating that "[t]here's certainly plenty of evidence from which a jury could find" that credit was extended and that extortionate means were used to collect on that extension of credit. (5/3/06 Trial Tr. at 133.) On appeal, the Court of Appeals found that there was

ample evidence that Cao was allied with the Nguyen brothers. See VanAnh, 523 F.3d at 56. Finally, this Court in its ruling denying Cao's Rule 33 motion for a new trial stated that there was "ample evidence of Cao's participation in the collection attempts on the night in question." R.33 Mem. & Order at 9. Given these rulings, there is no reason to believe that any sufficiency of the evidence arguments made by Cao's appellate counsel would have been successful.

Cao's argument concerning the presence of exculpatory evidence from his co-defendants is likewise foreclosed by this Court's ruling on his rule 33 motion, for the reasons noted above, see supra at 5-7. Moreover, as the Government notes, at the time of Cao's direct appeal the affidavits of Kuong and Quoc did not exist. Their appeals were not exhausted, and Cao's pact with them was still in effect. Appellate counsel could not have demonstrated something to the Court of Appeals which did not then exist, and thus there was neither deficient performance nor prejudice. See Robbins, 528 U.S. at 288.

2. Reasonableness of Sentence

Cao further contends that his appellate counsel should have argued that his sentence was procedurally unreasonable because Judge Torres did not state whether the sentence he imposed was a Sentencing Guidelines sentence or a non-Guidelines sentence, and substantively unreasonable due to its length when compared to that received by Cao's co-defendants. (Pet. Mem. at 19-22.) These claims likewise fail.

A district court's sentence is reviewed for both procedural and substantive reasonableness. United States v. Politano, 522 F.3d 69, 72 (1st Cir.2008). "The first task is to determine whether the district court made any procedural errors 'such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts or failing to adequately explain

the chosen sentence—including an explanation for any deviation from the Guidelines range.'" United States v. Fernandez-Hernandez, – F.3d –, 2011 WL 2567893 at *10 (1st Cir. June 30, 2011)(quoting Gall v. United States, 552 U.S. 38, 51 (2007)). The substantive reasonableness of the sentence (i.e., length of prison term) is reviewed for abuse of discretion. Id. (citing Politano, 522 F.3d at 72). See also United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2008).[14]

Here, a review of the record leaves no doubt that Cao's sentence was both procedurally and substantively reasonable. The sentencing Court carefully reviewed the presentence report and heard argument from counsel concerning the assessment of Cao's career offender status. (See Transcript of Sentencing Hearing conducted on November 17, 2006 ["11/17/06 Sent Tr."] at 5-19; Transcript of Sentencing Hearing conducted on November 28, 2006 ["11/28/06 Sent. Tr."] at 2-6.)[15] The Court then found that Cao had been correctly classified as a career offender and accepted the calculations in the Presentence Report (PSR) of Cao's net offense level of 32 and criminal history category VI, which resulted in a guideline range of 210-261 months. (11/28/06 Sent. Tr. at 6-7.) The Court noted that the guidelines were the starting point but not necessarily the final word. (Id. at 13.) Thereafter, the Court reviewed and considered the factors under 18 U.S.C. §3553, including the nature and circumstances of the offense, Cao's past criminal history, the seriousness of the offense, the need

---

[14] In Martin, the Court described the sequence of steps to be taken by a sentencing judge in imposing a sentence post-Booker and noted:
> This sequencing necessitates a case-by-case approach, the hallmark of which is flexibility. In the last analysis, a sentencing court should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them. Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale. Rather, the court should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

Martin, 520 F.3d at 91 (quoting Gall v. United States, 552 U.S. 38, 52 (2007)).

[15] Indeed, Cao's sentencing hearing was continued to a second date to permit the Court to give further consideration to the accuracy of Cao's career offender status. (See 11/17/06 Sent Tr. at 18-19.)

to promote respect for the law and deterrence, as well as the sentences of his co-defendants. (Id. at 13-17.) The Court noted that Cao's criminal history weighed against him but ultimately concluded that the applicable guideline range was excessive and instead imposed a sentence of 150 months imprisonment. (Id. at 18-19.) That sentence -- while greater than the sentences of his co-defendants -- was 60 months below the bottom of the applicable guideline range.

In short, the record shows that the sentencing court followed proper procedure and imposed a reasonable sentence. See Martin, 520 F.3d at 91-92. Accordingly, this Court can discern no circumstances under which the Court of Appeals would have remanded the sentence as unreasonable, and thus appellate counsel was in no way deficient in failing to challenge either the procedural or substantive reasonableness of Cao's sentence.[16] For the same reasons, Cao was not prejudiced by this omission. See Robbins, 528 U.S. at 288.

D.  Motion to Amend

Cao has also filed a motion for leave to amend his §2255 motion.[17] In his motion to amend -- filed some 19 months after his initial motion to vacate and 31 months after his conviction became final -- Cao seeks leave to assert up to 15 new claims, the majority of which allege ineffective

---

[16] This Court notes that appellate counsel did challenge Cao's sentence as to the Court's finding that he was a career offender. See Anh, 523 F.3d at 60-61. The fact that counsel was unsuccessful does not render his representation ineffective. See Strickland, 466 U.S. at 699.

[17] The motion to amend is entitled "Defendant-Petitioner Thinh Cao's Motion for Leave to Amend 28 U.S.C. Section 2255 Petition Pursuant to Federal Rule of Civil Procedure 15(a) et seq." (Doc. #240). In support of this motion, Cao filed an attached memorandum in support (see Petitioner's Memorandum of Law On Behalf Of the Defendant-Petitioner Thinh Cao's Motion for Leave to Amend, etc. ["Mem. re: Mot. to Amend"] and an affidavit entitled "Certification of Defendant-Petitioner Thinh Cao in Support of Defendant's Motion for Leave to Amend 28 U.S.C. Section 2255 Petition Pursuant to Federal Rule of Civil Procedure 15(a)" [hereinafter "Cao Aff."]. Both documents are included in Doc. #240.

15

assistance of counsel. (See Mem. re: Mot. to Amend at 9-10.)[18] Cao asserts that to date, despite numerous requests to his counsel and the Court, he has not received a complete copy of his file, and he therefore requests that he be provided with such documents. (Id. at 4-6, 12.) He further seeks an Order from this Court permitting him to submit a memorandum in support of these new claims 60-90 days after his "receipt of his completed case file from whatever source." (Id. at 12.) The Government opposes this motion.

For the reasons that follow, this Court declines to grant Cao's requests for a complete copy of his case file and for leave to file further briefing on his prospective claims. Further, the Court finds that the motion to amend must be denied. Irrespective of whether and to what extent Cao is entitled to copies of his criminal case file or other discovery,[19] the claims that he seeks to assert

---

[18] The new claims which Cao seeks to assert are that his trial counsel: (1) was ineffective for failing to object to the admission of telephone records and summary charts derived therefrom; (2) was ineffective by stipulating to evidence; (3) failed to object to the presence or absence of certain jury instructions; (4) was ineffective in his cross-examination of government witnesses; (5) was ineffective in failing to call defense witnesses; (6) gave an ineffective summation; (7) failed to challenge the sufficiency of the evidence supporting Count I; (8) failed to object to a constructive amendment/variance of the indictment; (9) failed to adequately communicate with and involve Cao in the preparation of Cao's defense; (10) failed to move for a severance on the specific ground of prejudicial misjoinder at the conclusion of the Government's case; and that (11) the Court erred in failing to give a jury instruction on stipulations; (12) the Court erred in admitting into evidence certain business records and summary charts without an adequate evidentiary foundation; (13) the Court erred in giving an impermissible and misleading jury instruction on Count II; (14) there was insufficient proof as to Count I; and (15) Cao's indictment was constructively amended and/or suffered a prejudicial variance.

[19] To the extent that the motion to amend contains a request for discovery under Rule 6 of the Rules Governing Section 2255 Proceedings ("2255 Rules") it will be denied, because (1) it is accompanied by a request for specific documents, see 2255 Rule 6(b), and (2) in view of this Court's assessment of the prospective claims themselves, Cao has not shown good cause, see 2255 Rule 6(a). See also United States v. Matthews, 89 F.3d 847 at *2 (9th Cir. 1996) (Table) (permitting discovery in §2255 proceedings is within district court's discretion); Mitchell v. United States, No. CV-09-8089, 2010 WL 5342960 at *2 (D.Ariz. Dec. 21, 2010) (denying request for Rule 6 discovery).

Separately, in view of lack of merit of Cao's prospective claims, see infra, this Court need not determine the scope of Cao's right to obtain copies of case documents from this Court (with or without prepayment of fees) or from his counsel – who, as Cao acknowledges, has apparently attempted to forward copies of documents to him.

either do not relate back or are so unlikely to succeed as to be futile.

1. Relation Back

A federal prisoner's efforts to amend his § 2255 motion are governed by Fed. R. Civ. P. 15. See United States v. Ciampi, 419 F.3d 20, 23 (1st Cir. 2005). Under Fed. R. Civ. P. 15, an untimely pleading amendment to a § 2255 habeas motion may be allowed only if the amendments "relate back" to the timely filed original pleading -- i.e., "the claim asserted in the amended plea[ding] 'arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" Id. (quoting Fed. R. Civ. P. 15(c)(2)). In the habeas corpus context, "the Rule 15 'relation back' provision is strictly construed, in light of 'Congress' decision to expedite collateral attacks by placing stringent time restrictions on [them].'" Id. (quoting Mayle v. Felix, 545 U.S. 644, 657 (2005)). "Accordingly, amended habeas corpus claims generally must arise from the 'same core facts,' and not depend upon events which are separate both in time and type from the events upon which the original claims depended." Id. at 24 (quoting Mayle, 545 U.S. at 657).

Here, given that Cao's prospective claims in his motion to amend are untimely, filed more than two years after his conviction became final, the prospective claims may only the asserted if they relate back to one or more of the claims asserted in his initial §2255 motion to vacate. Many of the new claims proposed by Cao do not relate back to his initial §2255 claims, discussed supra, but rather involve new matters. These include his proposed claims that the Court erred in failing to give a jury instruction on stipulations, in admitting into evidence certain business records and summary charts without adequate foundation, and in giving a misleading jury instruction on Count II, and that there was insufficient proof as to Count I.

Similarly, many of Cao's proposed ineffective assistance claims also do not arise out of a common occurrence or transaction with his original claims of ineffective assistance. See Ciampi,

17

419 F.3d at 23. These include claims that his trial counsel was ineffective in failing to object to the admission of telephone records and summary charts and in stipulating to certain evidence, in failing to call defense witnesses, to challenge the sufficiency of the evidence supporting Count I and to object to a constructive amendment of the indictment and to the presence or absence of certain jury instructions, in giving an ineffective summation; and in failing to adequately communicate with and involve Cao in the preparation of Cao's defense.

The fact that all of these claims relate to the same trial does not mean they arose out of the same "conduct, transaction, or occurrence" so as to relate back. See Mayle, 545 U.S. at 663-664 (rejecting such a broad reading in the habeas context). As such, these claims do not relate back and are untimely.

2. Futility

In addition, several of the proposed claims -- that his trial counsel failed to move for a severance on the specific ground of prejudicial misjoinder at the conclusion of the Government's case, that there was insufficient proof as to Count I, and that his indictment was constructively amended and/or suffered a prejudicial variance -- are either vague or repetitive of claims that have previously been considered and rejected by this Court, supra. Given their low or nonexistent likelihood of success, permitting those proposed new claims to be asserted would be an exercise in futility. See Muskat v. United States, 554 F.3d 183, 195-96 (1st Cir. 2009) ("The law is settled that futility is a sufficient basis for denying leave to file an amended complaint.") (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

3. Delay

Cao contends that he has been precluded from previously raising his prospective claims because of his lack of access to his case files and other documents. However, given the nature of

18

the claims that he wishes to assert, this Court is not inclined to permit any "fishing expedition" by Cao in an effort to identify more claims of dubious merit. Moreover, Cao waited two and one-half years after his conviction became final and 19 months after filing his original motion to vacate before asserting these proposed claims – all of which could have been asserted at the time of the filing of his original motion to vacate. See United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009) (reasons for denying leave to amend include undue delay in filing motion); Foman, 371 U.S. at 182 (same).

In short, because the claims that Cao wishes to assert are either untimely or are non-starters on their face, they do not comport with the requirements of Fed R. Civ. P. 15. Moreover, based on this Court's review of the record, none of the proposed claims asserted in the motion to amend comes close to reflecting any unconstitutional or other fundamental error of law that if left uncorrected, would render Cao's criminal trial a miscarriage of justice. See Addonizio, 442 U.S. at 184-185. Accordingly, the motion to amend must be denied.

This Court has considered all of Cao's other arguments in support of his motions and finds them to be unpersuasive.

III.  CONCLUSION

For the foregoing reasons, Cao's motion to vacate is hereby DENIED and DISMISSED. In addition, Cao's motion to amend his motion to vacate is likewise DENIED. His requests for an Order directing that he be furnished copies of case documents and for additional time to make further submissions in connection with his motion to amend are DENIED as moot.

RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts ("§ 2255 Rules"), this Court hereby finds that this case is <u>not</u> appropriate for the issuance of a certificate of appealability (COA), because Cao has failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. §2253(c)(2).

Cao is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. <u>See</u> § 2255 Rule 11(a).

SO ORDERED:

/s/ Mary M. Lisi

Mary M. Lisi
Chief United States District Judge

Date: September 12, 2011